# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| SUNCOAST WATERKEEPER, | |
| Plaintiff, | Civil Case No.: 8:21-cv-02168 |
| vs. | |
| ATLANTIC TNG, LLC, | |
| Defendant. | |

## CONSENT JUDGMENT

1. **Background**. This Consent Judgment resolves and settles the instant action which arises from the Suncoast Waterkeeper's, Complaint for Declaratory and Injunctive Relief and Civil Penalties ("Complaint") under the Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq., against Atlantic TNG, LLC ("Atlantic TNG"), (Dkt. 1). The Complaint alleges claims upon which relief can be granted pursuant to the Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq. ("Clean Water Act"). The Complaint alleges that Defendant violated at its facility located at 1701 Myrtle Street in Sarasota, FL ("Facility") several requirements of Florida's Multi-Sector Generic Permit, a National Pollution Discharge Elimination System ("NPDES") permit issued by the Florida Department of Environmental Protection ("DEP") under the authority of Florida Statute Section 403.0885, which authorizes Florida to implement the NPDES

Program pursuant to authority delegated to the State of Florida by the United States Environmental Protection Agency ("EPA"). Pursuant to Florida Administrative Code ("F.A.C.") Rule 62-621.300(5)(a), Florida adopted the EPA's Multi-Sector General Permit issued on September 29, 1995 (60 Fed. Reg. 50804) and subsequent corrections and modifications as amended on February 9, 1996 (61 Fed. Reg. 5248), February 20, 1996 (61 Fed. Reg. 6412), August 7, 1998 (63 Fed. Reg. 42534), September 30, 1998 (63 Fed. Reg. 52430), and January 19, 1999 (64 Fed. Reg. 2898) (hereinafter collectively referred to as the "MSGP"). Atlantic TNG denies the allegations in the Complaint and asserts that it is in compliance with the Clean Water Act and with the MSGP. The Parties intend to fully resolve the issues raised in this action and to avoid the delay, uncertainty, inconvenience, and expense of protracted litigation, the Parties have reached a settlement of this matter as set forth herein.

2. **Jurisdiction.** The United States District Court, Middle District of Florida, has jurisdiction over the Parties and subject matter of this Consent Judgment pursuant to 33 U.S.C. § 1251, et seq. Venue is appropriate in the United States District Court, Middle District of Florida, and the Parties have standing to bring any subsequent action or motion if allowed by the Dispute Resolution procedures herein.

3. **Term of Consent Judgment.** This Consent Judgment shall become effective on the date that the Court enters an Order approving it ("Effective Date")

and shall continue in effect during the Term. "Term" as used herein shall mean: (1) the last day of the twelfth (12th) month after the Effective Date, as described in Paragraph 10(h); or (2) in the event the Parties "Meet and Confer" as described in Paragraphs 10 (a) through (g), sixteen (16) months after the Effective Date unless either of the Parties invokes the Dispute Resolution described in Paragraph 16, in which event, the Term shall continue until the dispute is resolved either by agreement of the Parties, resolution via mediation, or judgment of this Court. Upon the expiration of the Term ("Termination Date"), this Consent Judgment, and all obligations of it, shall automatically terminate and be null and void.

4. **EPA/DOJ Approval**. The Parties shall submit this Consent Judgment to the EPA and the U.S. Department of Justice via certified mail, return receipt requested, within five (5) days after signing the Consent Judgment for review consistent with 40 C.F.R. § 135.5.

5. **Additional Best Management Practices ("BMPs").** As a result of the Complaint, and as a matter of voluntary good environmental stewardship, Atlantic TNG has fully implemented, and will continue to perform, additional BMPs to improve the stormwater pollution prevention measures at the Facility, as follows:

    a. **Rumble Strips.** To loosen sediment from tires from vehicles prior to entering the tire wash at the western exit of the Facility, Defendant has installed a series of rumble strips.

3

b. **Mechanical Sweeper.** Atlantic TNG performs daily sweeping of all paved areas at the Facility with a Laymor SweepMaster 300 mechanical sweeper. Atlantic TNG shall maintain a sweeping log at the Facility recording its sweeping practices.

c. **Rain Gauge.** Atlantic TNG has installed a recording rain gauge capable of continuously recording rainfall at the Facility to 0.01 inches. Atlantic TNG shall maintain the rain gauge in accordance with manufacturer's recommendations, maintain records of all maintenance, and provide maintenance records within fourteen (14) days of a request by Suncoast Waterkeeper.

6. **Confirmation of BMP Implementation.** Atlantic TNG has provided appropriate documentation and digital photographs to Suncoast Waterkeeper of the measures described in Paragraph 5 confirming said implementation.

7. **Additional Stormwater Monitoring**. In addition to the monitoring required by the MSGP, Atlantic TNG shall perform the additional monitoring as follows:

a. **Visual Monitoring of Storm Events.** Every three months between the Effective Date and the Termination Date, Atlantic TNG shall conduct visual monitoring of all storm events greater than 1.0" in magnitude as recorded by the Facility's rain gauge. Such monitoring shall occur along the perimeter of the Facility and at the monitoring locations for each drainage area at the Facility. Atlantic TNG shall record digital videos at both the entrance and the exit of the

Facility from at least two such storm events per three-month period, to the extent that such events occur. In addition, to the extent that the Facility is discharging storm water from the Facility from any storm events, Atlantic TNG shall record digital videos of the discharge. The monitoring required by this subsection shall only be required during normal business hours of operation of the Facility. Atlantic TNG shall submit copies of said videos to Suncoast Waterkeeper within thirty (30) days of the end of the last day of the 12th month after the Effective Date.

      b.    **Collection of Storm Water Samples.** To the extent that the Facility is discharging any storm water from the Facility from any storm events monitored pursuant to Paragraph 7(a), Atlantic TNG shall collect a sample from said discharge. Atlantic TNG shall have a laboratory analyze the sample for total suspended solids and iron in accordance with the protocols for storm water analysis set forth in the MSGP. Results from the Facility's sampling and analysis during the term of this Consent Judgment shall be provided to Suncoast Waterkeeper within thirty (30) days of the last day of the twelfth (12th) month after the Effective Date.

   8.    **Amendment of Stormwater Pollution Prevention Plan.** Within sixty (60) days after the Effective Date, Atlantic TNG shall amend the Facility's Stormwater Pollution Prevention Plan ("SWPPP") to incorporate all BMP requirements of this Consent Judgment (i.e. changes, improvements, sample log

5

forms, and best management practices). Atlantic TNG shall provide a copy of the amended SWPPP to Suncoast Waterkeeper within thirty (30) days of completion.

9. **Provision of Documents and Reports.** During the first twelve (12) months after the Effective Date of this Consent Judgment, Atlantic TNG shall provide Suncoast Waterkeeper with a copy of all documents submitted to or received from the DEP, if any, concerning the Facility's stormwater discharges. Such documents and reports shall be provided electronically to Suncoast Waterkeeper within thirty (30) days of submission to or receipt from such agency. Within ten (10) days of a request made by Suncoast Waterkeeper, Atlantic TNG also shall provide electronically to Suncoast Waterkeeper a copy of any logs referenced in this Consent Judgment.

10. **Meet and Confer Regarding Sampling Results and Additional BMPs.**

    a. If any analytical results from stormwater samples collected from the Facility taken during the first twelve (12) months after the Effective Date of this Consent Judgment contain levels of total suspended solids in excess of 100 mg/L or levels of iron in excess of 1.0 mg/L ("Benchmark Values"), Atlantic TNG agrees to evaluate potential actions to improve stormwater management practices to conform with the MSGP's requirements to apply the best available technology economically achievable ("BAT") for toxic and non-conventional pollutants, and the best conventional pollutant control technology ("BCT") for conventional

6

pollutants. This includes re-evaluating its structural and non-structural BMPs, evaluating and/or implementing stormwater treatment or retention systems, and evaluating and/or implementing additional BMPs aimed at reducing contaminant concentrations observed in stormwater samples.

      b.    In furtherance of that objective, Atlantic TNG shall prepare a written statement ("BMP Evaluation") that includes the following.

          i.    A discussion of any result where the pollutant level a particular outfall is higher than a Benchmark Value;

          ii.    An explanation of the possible cause(s) and/or source(s) of any result where the result for a particular outfall is higher than the Benchmark Value; and

          iii.    Identification of responsive BMPs that Atlantic TNG will implement to improve the Facility's stormwater management practices to reduce the possibility of future stormwater sampling results higher than the Benchmark Values

      c.    Should a BMP Evaluation be required, such BMP Evaluation shall be e-mailed to Plaintiff within thirty (30) days of the last day of the twelfth (12th) month after the Effective Date.

      d.    Any new BMPs identified for implementation in a BMP Evaluation shall be implemented as soon as practicable, except where the Parties

7

agree in writing to defer implementation of specific measures in order to effectively meet and confer in accordance with Paragraph 10(e).

   e. **BMP Evaluation Review.** Upon receipt of the BMP Evaluation, Plaintiff shall have thirty (30) days to provide Atlantic TNG with comments and questions. If requested by Plaintiff within thirty (30) days of receipt of such BMP Evaluation, the Parties shall meet and confer to discuss the contents of the BMP Evaluation and the adequacy of proposed BMPs to improve the quality of the Facility's stormwater discharges to conform with the MSGP's BAT/BCT requirement.

   f. If additional BMPs are implemented, Atlantic TNG shall update its SWPPP within thirty (30) days thereafter.

   g. Any concurrence or failure to object by Suncoast Waterkeeper with regard to the reasonableness of any additional measures required by this Consent Judgment or implemented by Atlantic TNG shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's stormwater discharges into compliance with the BAT/BCT requirement set forth in the MSGP.

   h. The Meet and Confer provisions of section 10 (a) through (g) hereof, shall apply only in the event that analytical sample results from stormwater samples collected from the Facility taken during the first 12 months after the Effective Date of this Consent Judgment exceed the Benchmark Values. If

none of the analytical sample results show a material exceedance of the Benchmark Values, then the Parties shall not be required to Meet and Confer and this Consent Judgment shall automatically, without notice to any party and without any order from this court, terminate and be null and void.

11. **Mitigation Payment.** In recognition of the good faith efforts by Atlantic TNG to comply with all aspects of the MSGP and the Clean Water Act, and in lieu of payment by Atlantic TNG of any penalties, which have been disputed but may have been assessed in this action if it had been adjudicated adverse to Atlantic TNG, the Parties agree that Atlantic TNG will pay the sum of ten thousand dollars ($10,000) to Sarasota Bay Watch, Inc. to be applied to environmentally beneficial projects relating to water quality improvements in the Sarasota Bay Watershed. Payment shall be provided to Sarasota Bay Watch, Inc. as follows: A single check shall be sent to Sarasota Bay Watch, Inc., P.O. Box 1141, Osprey, FL 34229. Payment shall be made by Atlantic TNG to Sarasota Bay Watch, Inc. within fifteen (15) calendar days of the Effective Date. Atlantic TNG shall copy Suncoast Waterkeeper with any correspondence and a copy of the check sent to Sarasota Bay Watch, Inc. Sarasota Bay Watch, Inc. shall provide notice to the Parties within thirty (30) days of when the funds are dispersed, setting forth the recipient and/or purpose of the funds.

12. **Fees and Costs.** As reimbursement for Suncoast Waterkeeper's investigative, expert and attorneys' fees and costs, Atlantic TNG shall pay

Suncoast Waterkeeper the sum of thirty-six thousand dollars ($36,000.00). Payment shall be made by Atlantic TNG within fifteen (15) calendar days of the Effective Date. Payment by Atlantic TNG to Suncoast Waterkeeper shall be made in the form of a single check payable to "Super Law Group Attorney Trust," and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by Suncoast Waterkeeper that have or could have been claimed in connection with Suncoast Waterkeeper's claims, up to and including the Effective Date.

13. **Compliance Oversight Costs.** All compliance oversight costs available, if at all, under the Clean Water Act shall be liquidated and fixed in the amount of two thousand dollars ($2,000.00). Payment shall be made by Atlantic TNG within fifteen (15) calendar days of the Effective Date. Payment by Atlantic TNG to Suncoast Waterkeeper shall be made in the form of a single check payable to "Super Law Group Attorney Trust."

14. **Mutual Release of Liability and Covenant Not to Sue.** In consideration of the above, and in reliance on the Court's retention of jurisdiction to resolve disputes pursuant to Paragraph 16 and consistent with Paragraph 2, except as otherwise provided by the dispute resolution procedures in this Consent Judgment, the Parties hereby forever and fully release, and covenant and promise not to sue or file any claim or action whether judicial or administrative against or involving, each other and their respective parents, affiliates, subsidiaries,

10

divisions, insurers, successors, assigns, current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, at law and in equity, which arise or could have arisen from the Complaint or the 60-Day Notice Letter, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum of money, incurred or claimed or which could have been incurred or claimed in the Complaint or 60-Day Notice Letter, for the alleged failure of Defendant to comply with the Clean Water Act at the Facility, from the Effective Date and up to and including the Termination Date**.**

15.  **No Admission or Finding.**  Neither Party admits, and both Parties specifically deny, any violation of any law, rule, regulation or anything else, including but not limited to the MSGP and the Clean Water Act and nothing herein shall it be construed as an admission of fault, non-compliance or wrong-doing. This Consent Judgment shall not be introduced by either Party in evidence to prove anything in any court or before any administrative body, except it may constitute evidence in actions seeking compliance with this Order.

16.  **Dispute Resolution Procedures.**  Any disputes concerning the terms of this Consent Judgment shall be resolved through the following procedure. The Parties agree to first meet and confer to resolve any dispute arising under this

Consent Judgment. In the event that such disputes cannot be resolved through this meet and confer process, the Parties agree to request a settlement meeting before the Magistrate Judge assigned to this action. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, or otherwise are unable to obtain a settlement meeting within ten (10) weeks of the request, the Parties agree to engage a certified mediator to mediate the dispute. If the Parties cannot agree on the selection of a mediator, or if the mediation does not resolve the dispute, then either Party may, as stated in the Court Order approving this Consent Judgment, move the Court on or before the Termination Date to re-open the civil action for further proceedings, pursuant to Local Rule 3.09 (b).

17. **Force Majeure Event.** "Force Majeure Event" shall mean any unforeseeable or uncontrollable weather event, storm, flood, natural disaster, terrorist attack, government shutdown, supply chain disruption, hurricane, tornado, labor strike, or other naturally occurring or man-made event not within the control of the Parties. If compliance with this Consent Judgment is made impossible or impractical due to a Force Majeure Event, then the Party thereby affected shall be excused from complying with the requirements of this Consent Judgment thereby affected. The Party affected by a Force Majeure Event shall notify the other Party, in writing, as soon as reasonably practicable.

18. **Impossibility of Performance.** Where implementation of the actions set forth in this Consent Judgment, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good faith efforts of the Parties, the Party who is unable to comply shall notify the other in writing within fourteen (14) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The Parties agree to meet and confer in good faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of one of the Parties, new performance deadlines shall be established. In the event that the Parties cannot timely agree upon the terms of such a stipulation, either of the Parties shall have the right to invoke the dispute resolution procedure described herein.

19. **Construction.** The language in all parts of this Consent Judgment shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the MSGP, Clean Water Act or specifically herein.

20. **Choice of Law.** This Consent Judgment shall be governed by the laws of the United States, and where applicable, the laws of the State of Florida.

21. **Correspondence.** All notices required herein or any other correspondence pertaining to this Consent Judgment shall be sent by regular, certified, overnight mail, or email as follows:

If to Plaintiff:

13

Justin Bloom
Attorney at Law
P.O. Box 1028
Sarasota, FL 34230
Bloomesq1@gmail.com

Douglas Chermak
Super Law Group, LLC
110 Wall Street
New York, NY 10005
doug@superlawgroup.com


If to Atlantic TNG:

Jason Brewster
Atlantic TNG, LLC
1701 Myrtle Street
Sarasota, FL 34234
jbrewster@atlantictng.com

and

George F. Gramling, III, Esq., and
Josh Coldiron, Esq.,
Gramling Environmental Law, P.A.
118 South Newport Avenue
Tampa, FL 33606
george@gramlinglaw.com
josh@gramlinglaw.com


Email shall be the preferred method of communication. Notifications of communications shall be deemed submitted on the date that they are emailed, postmarked or sent by first-class mail or deposited with an overnight mail/delivery service.  Any change of address or addresses shall be communicated in the manner described above for giving notices.

22. **Successor Entities.** All of the rights, duties and obligations contained in this Order shall inure to the benefit of and be binding upon the legal successors of the parties respectively.

23. **Assignment**. This Consent Judgment shall not be assigned by either Party to any entity, except with the written consent of the other Party.

24. **Extension of Deadlines.** The Parties may, at any time, agree to reasonably extend any deadline (except the Termination Date) provided in this Consent Judgment without seeking leave of the Court. Any such agreement shall not become effective unless and until such agreement is set out in writing and signed by counsel for both Parties.

25. **Modifications.** Any changes or modifications to this Consent Judgment must be in writing and signed by all Parties and entered by the Court, with the exception of any extension of deadlines pursuant to Paragraph 24.

26. The Clerk is **DIRECTED** to **CLOSE** this case.

SO ORDERED, this _____ day of _____2022.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

_____, 2022

**FOR PLAINTIFF:**

_____ / 08-15-2022 _____
Rusty Chinnis, Board Chair       (Date)
Suncoast Waterkeeper

**PLAINTIFF'S COUNSEL:**

/s/ _____
Justin Bloom
FL Bar # 89109
Justin Bloom Attorney at Law, PA
P.O. Box 1028
Sarasota, FL 34230
Telephone: (917) 991-7593
Facsimile: (866) 574-2169
Email: bloomesq1@gmail.com

/s/ _____
Douglas Chermak, *Pro Hac Vice*
Super Law Group LLC
110 Wall Street
New York, NY 10005
Telephone: (212) 242-2355
Facsimile: (212) 242-7956
Email: doug@superlawgroup.com

*Attorneys for Plaintiff SUNCOAST WATERKEEPER*

**FOR DEFENDANT:**

*Megan Kitchner*, 8/15/22
Megan Kitchner, Owner          (Date)
Atlantic TNG, LLC

**DEFENSE COUNSEL:**

/s/ *George F. Gramling, III*
George F. Gramling, III, Lead Counsel (Fla. Bar No. 441287)
Email: george@gramlinglaw.com
Joshua C. Coldiron (Fla. Bar No. 102998)
Email: josh@gramlinglaw.com
Gramling Environmental Law, PA
118 S. Newport Ave.
Tampa, FL 33606-1944
Telephone: (813) 259-1060

*Counsel for Defendant Atlantic TNG, LLC*